NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

EDWARD T. ACKERMAN, PETITIONER, v. H. B. WIGGINS SONS CO., RESPONDENT.

Decided August 4, 1941.

For the petitioner, *David Hilowitz.*

For the respondent, *George E. Meredith.*

\*      \*      \*      \*      \*      \*      \*

Owing to the petitioner's condition, his testimony was taken at his home *de bene esse* in the presence of Jacob Baer, a Supreme Court Examiner of New Jersey. The testimony so adduced was transcribed and offered in evidence at the trial. Following this the condition of the petitioner improved to the extent that he was permitted to come to court by his physician, and he, accordingly, testified in his own behalf at a later date.

\*      \*      \*      \*      \*      \*      \*

The petitioner's testimony indicates that on January 1st, 1940, while wheeling a wheelbarrow loaded with ashes up an incline, he felt a sharp pain in his chest. He stated that he rested for a while, then went back to the wheelbarrow, continued to wheel it outside to an ash pile where he dumped it, and then returned to the boiler room, threw several shovelsful of coal on the fire and attended to the rest of his duties until he was relieved by the day watchman. The petitioner testified also that the acts above described were routine duties, and he had done the same thing nightly for a period of approximately four years while employed by this respondent. After being relieved by the day watchman, the petitioner testified that he walked some considerable distance to a bus stop where he had to wait a long period of time in the cold before the bus arrived. It was necessary for him to change buses in Bloomfield Center, and he had another long wait for the bus that would take him to his home. After leaving the second bus he had a walk of approximately one-eighth of a mile to his home. He testified that he just got in the doorway of his home when he collapsed and was taken upstairs to bed, and a doctor was called. The petitioner admitted in his testimony that he had said nothing to the day watchman who had

relieved him regarding an accident or regarding the fact that he did not feel well, and that he did not at any time report an accident to his superiors.

Dr. I. A. Meeker, who was called by the petitioner, testified that he was called to the petitioner's home on January 1st, 1940, and he found the patient suffering from a severe pain in the chest and observed that his breathing was difficult, his pulse rapid, and that he had treated the patient continuously for a heart condition. It was the doctor's opinion that the petitioner was 100% totally disabled.

Although Dr. Meeker testified on direct examination as to a history which he received which indicated that the petitioner was engaged in strenuous labor on the night in question, which was harder than usual, and that the petitioner had suffered a pain while hauling out ashes, and that he had to get someone to help him on the job, he was asked on cross-examination to produce his treatment card. The significant part of the treatment card which was marked *P-1* in evidence, is the history as indicated thereon, and which read as follows: "Stood in cold for 2 hrs. this A. M. Later developed severe pain over heart, in pit of stomach & around toward axilla." This history appears on the treatment card opposite the date January 1st, 1940, and above it in similar writing, some of it written between the lines of the card, appears the following, which obviously was written at a different time: "Did not feel well during night while working. Had to sit down & get his breath. Pain began as soon as he got out in cold."

The lay witnesses who appeared for the respondent denied any knowledge or notice of an alleged accident or injury by accident until about April 15th, 1941, when a letter was received from the petitioner's attorney which stated in effect that the petitioner had met with an accident and that compensation would be claimed.

Mr. Sheele, an official of the company, testified that he went to the petitioner's house shortly after his original illness, and at that time neither the petitioner nor his wife gave any indication to him that the petitioner was suffering from an injury or illness by virtue of an accident or other conditions

brought about by his work. On the contrary, the witness stated that he was advised that the petitioner's trouble arose because of the fact that he had an unusually long wait out in the cold for a bus, and that it took the petitioner more than two hours to get home on the morning in question.

The fellow worker, Deering, who was a day watchman, and relieved the petitioner, testified that the petitioner looked all right on the morning in question, that he looked the same as he usually did, and that the petitioner made no complaint of any character to him.

The doctors appearing for the respondent testified that the petitioner presented a typical picture of an old arteriosclerotic condition with hypertension. It was their opinion that the condition was neither caused nor aggravated by trauma, and that if trauma had had any influence on the pre-existing condition, the results would have been immediate and not delayed for a matter of minutes or even hours as here.

On this testimony the respondent by its attorney moved for a dismissal of the petition on the grounds:

1. That the petitioner did not sustain the burden of proving that he met with an accident arising out of and in the course of his employment.

2. That there was no proof that an accident or an injury by accident was reported to anyone in authority within ninety days as required under the provisions of R. S. 34:15-17.

3. The petitioner did not sustain the burden of proving that his condition was the result of an accident.

I have given this matter unusual thought and consideration because of the gravity of the situation, it being conceded even by the respondent that the petitioner in this present condition is totally and permanently disabled.

From the evidence adduced I am constrained to grant the motion.

If I were to accept the petitioner's testimony at its face value, I would have difficulty in finding that he met with an accident arising out of and in the course of his employment. On his own testimony it appears that the petitioner on the night in question was doing his regular work in the regular

way, and it appears further from the evidence that his work was lighter rather than heavier on the date of the alleged accident because of the fact that only one boiler out of three was in operation, the plant having been closed down over a long week-end holiday.

There is not the slightest suggestion in any part of his testimony that the circumstances were different than usual, that the load was heavier, that the incline was steeper, that he slipped while pushing the wheelbarrow, that the wheelbarrow ran off the plank and subjected him to a strain, or any other fact which would point to the happening of an accident.

The facts seem quite similar to those which existed in the case of *Johnson* v. *Ulster Iron Works, 9 N. J. Mis. R.* 239; 153 *Atl. Rep.* 95, affirmed by the Court of Errors and Appeals, 109 *N. J. L.* 267; 160 *Atl. Rep.* 635. The court in that case, commenting upon a similar state of facts, stated in part at *p.* 239 of 9 *N. J. Mis. R.* and at *p.* 95 of 153 *Atl. Rep.*:

"There was nothing unusual in the same or in the manner of the performance of his work. * * * There is no testimony that deceased was doing anything different from that which he was called upon to do, and the usual appliances appear to have been in order. There is nothing to suggest an accident save Johnson's death."

Aside from this, I find it helpful in determining where the truth lies in a disputed question of fact to consider the surrounding circumstances and the atmosphere of the case. As I indicated in the case of *Clarke* v. *Ward Baking Co., 19 N. J. Mis. R.* 268, it is only human nature for a person who has been subjected to an accident to make some complaint about it and to do so promptly following the happening. Where the results were so drastic as here, as to render a man totally disabled, it would seem that the complaint would come even sooner. As the testimony indicates, the first complaint or report of any accident or injury by accident was not made to the employer until some 3½ months after the alleged occurrence, when the letter was addressed to the respondent by the petitioner's present attorney. Until that time no

demand was made for compensation payments, no request was made to supply medical services, and the petitioner and his family and his doctor seemed to treat the matter as a routine illness unassociated with the petitioner's employment, as indeed I believe it was.

I have also in mind the fact that the petitioner's testimony, even if I conclude that it spelled out an accident, is entirely uncorroborated. Some attempt at corroboration was made by asking the family physician for the history which he obtained. I am satisfied that the only history that the doctor secured from the petitioner during the course of treatment was that stated opposite the date, January 1st, on the exhibit marked *P-1* in evidence, namely: "Stood in cold for 2 hrs. this A. M. Later developed severe pain over heart, in pit of stomach & around toward axilla." This seems reasonable and probable, not only from the physical make-up of the card, which was marked in evidence, but I also have in mind the doctor's attitude and demeanor on the stand, his attitude of belligerence, and his reluctance, which amounted almost to a refusal, to surrender the card when requested to do so. This thought is further supported by the fact that at no time during a period of well over a year did the attending physician make any report, verbal or otherwise, to the employer, nor did he call upon the employer for the payment of his bill.

Even if I were to resolve all doubts in favor of the petitioner, although there is no doubt in my mind as to his failure to prove the happening of an accident, I cannot conclude from the greater weight and quality of the evidence that the petitioner's condition is the result of trauma. It is quite evident from the testimony that the petitioner is and has been suffering for a number of years from a condition of hypertensive arteriosclerosis. Because of the condition, and because of his age, he was due to collapse at almost any time, with or without the intervention of trauma. I am satisfied from the more credible testimony that the man's collapse took place not during working hours, but while standing out on the public highway waiting for a bus, and that this collapse was not due to any particular exertion, but to the natural end result of the disease from which he suffered.

In view of the foregoing, it becomes unnecessary for me to pass on the question as to whether or not an accident or an injury by accident was reported to the respondent within the statutory period.

\*        \*        \*        \*        \*        \*        \*

It is, accordingly,  \*  \*  \*  ordered that the petition be and the same is hereby dismissed, without cost to either party.

HARRY S. MEDINETS,
*Deputy Commissioner.*